We have six cases on the calendar this morning. Four patent cases, a case from the claims court, court of federal claims on a taking issue and a government employee case. That and one of the patent cases are submitted on the briefs and will not be argued. First case is James Logan v. Hormel Foods and Wal-Mart 061114, Mr. Bowick. Good morning. My name is Bob Bowick. I'm representing the appellant this morning. With me today is appellant James P. Logan, Jr. Mr. Jones, this case involves spiral slicing of boneless hams. It doesn't involve spitting, apparently. It doesn't, Your Honor. There is a claim term. Just the words. Correct, Your Honor. The term in dispute in this case was support member in the meat. The district court, through a torturous interpretation, said that this spit must traverse a full length of the spiral cut to help the boneless meat product maintain its shape or integrity during slicing operations. Basically using 26 terms to define spit. The term support member was previously interpreted in an earlier case by a different court who accused himself once this case was transferred back to it. The district court's claim interpretation is wrong for many reasons. The district court admitted that the claim language, quote, mentions nothing about maintaining the meat shape prior to spit removal. Further, the district court relies upon the preferred embodiment of the specification. Isn't the real issue whether the court was correct or not in construing the claim such that the support member goes all the way through the meat? Is that the issue? Yes, Your Honor. Who's right? Your Honor, the appellant's right here. The district court was incorrect for several reasons. The claim one that was at issue says a support member in the meat. Under the Doctrine of Claim Differentiation, Claims 2, 3, 5, 6, and 10 require that the spit traverse or is through the meat versus in, a distinction between the claim language of the various claims. Well, of course, we all know that claim differentiation has its place, but it's not an absolute rule. What does the specification tell us? The specification describes a single embodiment, the preferred embodiment, whereby the spit is inserted all the way through the meat. The original application was on a machine whereby spit was inserted into a meat product and then the spit was rested in a lower chuck assembly and the upper end of the spit was connected to the upper chuck assembly. However, the claims, some of which do claim that specific embodiment, claim one does not require that there be an upper chuck or a lower chuck assembly or any process limitations other than the temporary insertion of a support member in the meat. As I understand your argument, you're contending that the support member doesn't necessarily need to pierce through the entire piece of meat but that it only needs to hold the product, that support members should be construed as requiring only that it hold the product and not necessarily support it throughout its entire length. Is that correct? That's correct, Your Honor. The patent talks about inserting it into the meat, just meaning it has to go from the outside into the inside of the meat. But the specification does seem to make a clear distinction between the chuck assembly that holds it and the spit that supports it. Correct, Your Honor. That's what the judge relied upon. What's wrong with that? Because, number one, they make a distinction between support and hold. If you look up either definition, they are synonymous with one another. You can't hold something without supporting it and vice versa. Well, you know, this is an interesting case, and it's so typical of so many patent cases that are litigated and come up to this court. We have a term in the claim that's in dispute, support member. The term that is used in the claim is not used anywhere in the written description. If that term was used in the written description, there wouldn't be this kind of debate. But we're left hanging. Why patents are written this way, I don't know. And then to compound the complexity, the application only has one embodiment, which of course puts into play this debate about, well, is that just an embodiment or is that the invention? So we have both of these intriguing problems, which are sort of self-inflicted by practitioners. I don't know why, but they're self-inflicted problems. But nonetheless, we have to grapple with the reality of what we have here. And the district court attempted to provide some meaning for this support member discerned from the intrinsic record. And in the intrinsic record, whether the preferred embodiment is exemplary or not, there's a clear distinction between something that holds and something that supports, the spit being the support and the chuck being the thing that holds. And it seems to me that's entirely reasonable and appropriate and correct. I agree with that if the specification made it clear that the chuck assembly did all the holding and that the spit couldn't hold. That 100% of the holding was done by the chuck assembly, which is basically a round disc that rotates that has multiple prongs that the meat rests on, which the spit comes out of the same, is mounted fixedly attached to the same part. The preferred embodiment is a longer spike than the other spikes of the chuck assembly. So just because the specification refers to that as holding and calls the spit, which throughout the specification they used the term spit versus support member, and the district court found that support member and spit were synonymous, that there's no exclusion in the specification that says that the spit or support member can't also hold or support the meat. Assuming that the spit requires a function to support the meat, what appellees call a prong, or it's really just a spit, a shorter spit I guess you could say, that the meat is inserted on, it does support the meat. Is there any dispute over whether the support member and the meat was a means plus function language claim element rather than a straightforward claim element? There was not, Your Honor. There is a dispute on what if product by process claims, which there's no dispute that these claims are product by process. There's sort of some conflicting authority with the Federal Circuit on whether or not the limitations of the process should be limitations of the product claim. In the file history, the Patent Office didn't think so, several times rejecting Allen's argument that the product is what has to overcome the prior art and the process is not part of the claim. Additionally, the district court relied on experiments that were submitted to the Patent Office during the reexamination and ultimately an appeal, a court of appeals, I mean the Patent Board of Appeals and Interferences, whereby the appellant argued that the prior art that the Patent Office was relying upon was inoperable and therefore not prior art. Nowhere did he distinguish his invention from the prior art because it was no longer prior art once the Patent Office saw that the experiments proved that the process taught by the prior art would not produce the results described in that patent. Counsel, I'm sympathetic to the difference you pointed out and saw it myself in the claims between in the meat and through the meat with regard to the length of the spit, but we can't read out support member and in your specification you use the word held when you're talking about the spikes, the chuck, and then you use the term provide structural support during cutting whenever you're talking about the spit. So it just seems that given the specification that we have to import, and the district court rightly did, some requirement of supporting the meat during the cutting operation into the support member and define it as such. What about this? What about a definition wherein the spit did not have to traverse the entire length of the ham but has to go so far as to provide support during cutting? Because for me, from a factual standpoint, it seems to me that it's certainly possible that it doesn't go all the way through the meat but still provides sufficient support during cutting and therefore would meet both requirements. Your Honor, we're fine with a definition like that, but the district court went further than that and said that the spit had to insert the entire length of the spiral cut. So imagine a... That's because Figure 4 did. Figure 4 was a preferred embodiment that had the spit that inserted one end and out the other. Preferred embodiment or the only embodiment? Correct, Your Honor. But the district court said that imagine an 8-inch ham that the bottom edge and the top edge aren't sliced, but the 6 inches in between are sliced. So under the district court's interpretation, the spit has to be inserted 7 inches into the ham. If it's 7 1⁄4 inches and there's one slice that's past the tip of that spit, there's no infringement under the district court's interpretation. But if there's just 1 inch, it would still seem to me to sufficiently support the meat during cutting, and it would be in the meat, according to the claims, right? I mean, what are the circumstances under which we read a limitation from the spec into the claim? Well, it's my understanding that you'd be very careful not to import a limitation from the specification. If the court wants to import support, I don't have a problem with that. It's just requiring... Well, you wouldn't be importing it there, right? The claim says support. It does say support. That's not importing. That's just reading the claim. It's just how much, the degree of support, how much penetration is required before this thing's a support number. That's ultimately the issue. You're into your bottle. You can continue to use it now, or you can save it. Mr. Mabry. Whenever... May it please the court. Whenever one attempts to spiral slice meat without a knife, using a machine where it's driven in the bottom chuck, one has a problem. See, the problem in a word is torque, rotational force, because the same motor that turns the bottom chuck turns the meat. And when the power-driven bottom chuck turns the meat and the meat encounters and engages the slicing blade, rotational force is imparted into the meat. It causes stress on the meat. It causes the meat to twist. Hormel solved this problem. Hormel used a drive shaft to turn the bottom chuck and the upper chuck at the same rate. This eliminates the need to put a support number in the meat. But claim one doesn't have any structure relating to whether there's a single-driven chuck or a dual-driven chuck, correct? No, it does not, Your Honor. But what claim one does, and what Logan disclosed and what he claimed, is claim one talks about insertion of a support number in the meat. That's the way Logan solved the problem. And when you put the support number in the meat, it's very clear that the purpose of the support number is to provide a structure, to take the place of the bone, to hold the meat not in place, but together, to hold the meat as one piece while it's sliced, while it's under that rotational stress. Are you talking about... You're not really defending the claim construction. You're talking about infringement. That's right. You're saying you don't infringe. That's correct. And I'm saying the reason is because they solved the problem. And let's turn to the claim construction. The claim construction is irrelevant to whether you infringe because you have a two-pronged spike. We have a prong, and that prong does not provide support, and it does not traverse the spiral cut. Both of those are limitations on the support number that are properly construed. The district court understood this problem of rotational stress. The district court properly construed the term support number to require a spit which serves a particular purpose, namely to provide a structure in a meat that doesn't have a structure. It's to give it support while it's under that rotational stress. And your two-pronged, whatever it is, material, doesn't that provide even more support than a spit? No, Your Honor, because the two prongs, they don't support the meat in the sense the way the claim term is used. All they do is they hold the meat in position. They don't support the meat as the claim term is used. And it's... What's the difference? The difference is the term support number has a special meaning, as the district court understood it as he construed the claim. It means to hold the meat together, not hold the meat in position. That is clear from the language of the claim. It's clear from the specification, the written description, as well as the prosecution history. It's a rather subtle difference. It is an... If there's a difference. It is not a subtle difference. It is exactly the claimed difference. It's what the patentee intended. Counsel, if I understand your argument right, the claim construction that I suggested earlier, one in which support member was read to require supporting the meat during slicing, maintaining its shape and integrity during slicing. If we agreed and affirmed the district court on that first prong, but then said because it says in the meat, it doesn't necessarily have to go the whole length of the meat, but it has to go so far as to satisfy the support member requirement, that your product would still not infringe, even under that construction, because your spikes on either end, I don't know if they're properly called spikes, but spikes on either end do not help the boneless meat maintain its shape and integrity during slicing. That would be your position, is that right? That is absolutely correct. Okay. But we also, of course, take the position, and we'll go ahead and talk about this, that the support member must traverse the meat. That is, in the language of the claim, it's in the specification, and it's really in those two places. Where is it in the language of the claim? I'd like to go to that right now. It's embedded in the language of the claim. In page 8 of our brief, we have the claim reprinted, claim one. And it says that the depth of cut, of said cut, and that's, of course, referring to the continuous spiral cut, the depth of the continuous spiral cut is limited to the non-cut core of meat. There is where this requirement appears. All the parties agree that the term, the claim term, uncut core of meat, means a wall of meat. On one side of the wall of meat is the end of the spiral cut. On the other side of the wall of meat is the support member, or the spit. It's not disputed. Judge Werlein found that in another case. All the parties agree. Right here it says, wherever there is a continuous cut, there's an uncut core. Wherever there's an uncut core, there must be a spit. Wait, there doesn't have to be a spit. I mean, I don't read the claim as saying the spit has to go through the uncut core of meat, and there certainly is nothing that I found, and please correct me if I'm wrong, in the specification that says the spit must be in the entire section of the uncut core of meat. If I'm wrong, I do want you to correct me. I do want to come to that, and I'll show you our position on that. I think, just so it's clear, so we're all saying the same thing, our position is that it's just simple logic here. Where there is a cut, there must be a core. And where there's a core, all the parties agree there has to be on one side of that wall, there has to be a spit. So where there's a cut, there must be a spit in each place. Why must there be a spit? Why can't there be a solid core of meat? Because Judge Werlein has construed this claim already, and the parties are in agreement. We don't dispute it. No one disputes it, that an uncut core is a wall with a spit. On one side of the wall is a spit. The second reason is that the prosecution history, of course, shows that a wall of meat, a solid core without a spit in it, will not, it does not support the meat, and those are the experiments. I'd like to turn to the... Well, doesn't the claim require that that core, if you look at the last two lines of the claim, that the core causes the boneless sliced meat to retain its shape when the support member is removed. So when the support member is removed, if the support member is the spit, the only thing that's supporting the meat is the core. Correct. You're correct, Your Honor, when the support member is removed. But when the support member is in the meat, before it's removed, while the meat is under rotational stress, it's plainly clear language here, it's very clear, it's the support member that provides the support to the meat while it's being stressed. After the stress is over, the slicing is done, then it's the core that causes the meat to retain its shape. But here's, suppose the meat is 10 inches long and the spit goes 9 3 quarters inches. Are you saying you really can't, you don't think that we can cut the spiral on that last quarter of an inch and it won't be supported by the spit? I mean, you know, the spit's going the majority of the way through the meat, but maybe not all the way. In that circumstance, that spit is not providing sufficient structural support to hold the integrity of the meat during the slicing process? Well, the claim says, we don't know the answer to that, but what we do know is what the patentee claimed and what he said, and let's look at the spec too, because you asked me about that earlier, and I do want to address that. In column 9, what Pat Holder described, begins there on page 29, or line 29, to summarize the operation of the present invention. A meat spit is inserted in the meat to be cut and fitted into upper and lower chucks. Right there is the patentee. We can take the patentee in his own words. That's the preferred embodiment. That is the invention, is what the patentee said. He only described, there's only one embodiment, and the patentee says, this is the invention. It's a limitation on all ten claims. When he specifically uses the word, the present invention, he's not talking about the current, the preferred embodiment, he's talking about the scope of all the claims. Where are you on column 9, just so I'm right with you? Line 29. And it's the same, in this traversing, is the opposite side of the same coin as the structural support, because he says the present invention when he talks about the structural support as well. But when he says the present invention, do you think that rises to the level of a clear disclaimer? Because isn't that what our case law requires if we're going to read a limitation from the spec into the claim? Doesn't it require a clear disclaimer in the spec? I'm thinking Wang, Toro, that whole line of cases that we have that talk about under what circumstances you read a limitation from the spec into the claim. And I just, I want to know where to draw the line. I think the case law says that when you use this term, the present invention, it is a clear indication of what the patentee meant about the scope of his claims. And there are a number of cases, we've cited them in a brief, I can refer you to them, where those words do say, your case law does say, when the patentee uses that term, that is very strong evidence that the patentee has put a limitation on other claims. So if the claim didn't say in the meat at all, just talked about a spit, but there was nothing in the meat, through the meat, nothing at all, would you still be arguing that the use of the word the present invention means we should read a limitation that has no basis at all in the claim, completely into the claim? We're looking at the specification only to determine what the patentee meant by the scope of his claims. And here, the construction the district court took was a careful one. He did not require the spit to go in and out, he just required the spit to traverse the spiral cut. And that was consistent with the language of the claim that I previously pointed out, the specification, and of course, the prosecution district. I do want to say a word about counsel's argument that there is support in the specification for this idea of holding that the chuck assembly performs the function of the holding, but the specification doesn't say that the spit excludes that objective. Well, we've read, we've all read the specification. The specification doesn't say anything about the spit serving that purpose of holding the meat. It completely distinguishes the role of the spikes from that of the spit, and it's counsel's interpretation renders really the words of this patent and of this specification meaningless, superfluous. That's why it is an important difference, Your Honor, Judge Lurie, between holding together and holding the meat. It's very clear what the patentee intended. I'll just say a word about the argument that there was a debate in this case about conflicting case law between this circuit's case law. There is no conflict. We disagree that there's any conflict. Well, that's refreshing to hear. We argued this in the brief, but we think it's very clear from the Scripps line of cases. We're talking about a product of the process claim where it's a new product, very difficult, if not impossible, to define by a structure. In this case, like the Atlantic thermoplastic case, involves claims where the method's patentable, where the patentee relied on the process to overcome the prior art, to distinguish the prior art. It's very clear those cases can be harmonized. In this case, the process limitation is a limitation that has to be considered for infringement. Here, the patentee cannot claim the patent-independent process. The only other comment that I would make is that we haven't talked about the prosecution history, but the prosecution history, the experiments that the patent holder conducted also clearly show that this term is valid. The support member has this particular purpose, which is to hold the meat together. I'll just read in my final seconds what the patentee said about that, talking about limiting the invention. Applicants use, and this is in the joint appendix, 198, applicants use of the spit to maintain meat integrity during the slicing operation and an annular central integral core of meat to maintain meat integrity after slicing and removing of the spit is patentably distinct. He also said, page 193, in talking about the experiment, excuse me, on page 192, soon after cutting began the rotational force imparted on one end of the meat caused the rotational stresses in the core of meat that caused the product to twist apart. Page 193, as seen on the video, the spit provides the buttonless meat product with sufficient structural stability during the slicing operation. Clear manifestation, that is a disavowal of any ability to spiral slice without a prong spike that provides the structural support. And the evidence sheds, no matter what you conclude. Mr. Mabry, I think you've run over. I think you've consumed your time and we've got to change the case. Mr. Bowick has a little time left. Just to clarify something here. What the appellee's process involves is a bottom turntable with a single spike, they call it a prong. The first product they made when they brought this suit was two or three-eighths inches long. About a year later, it changed into a one-inch spit. At the top, the top chuck assembly has two spikes. Getting into that, I'd like to address the... How big is the ham, Bill? About six to eight inches. Okay, good. You didn't bring any samples, did you? I didn't. We got a free judge up here. We couldn't slice it because my wife couldn't get through security. I'd like to address the infringement because even under the court's interpretation, the bottom section of the ham falls within that limitation that the court read into support member that traversed the length of the spiral cut. The spit in the appellee's product extends through the bottom two and three-eighths inch through the spiral slice section. So at least there's a couple inches of slicing at the bottom of this product that falls within this limitation. The rest of it is made by the same process. It might be a convoy of sales or some damage theory there. But we're here because they use a spit that creates a temporary support member that creates the axis of the meat about which it's cut. If they didn't have a spit, we wouldn't be here. We wouldn't care. They shorten it from two and three-eighths to one inch. Why? Because they have to have something that forms that axis that supports the meat. Otherwise, they would just use two or three, as long as one of them's not in the middle, that creates that axis. But I don't think there's any way to spiral slice a boneless meat product without a support member that creates the axis of the meat about which it's turned, as required by Claim 1. Counsel, do you mind if I redirect you just to the conversation that we had on the fact that in your specification, you say to summarize the operation of the present invention and then talk about a spit that goes all the way into entirely the whole meat? Do you think that that ought to create a clear disavowal of claim scope or a clear disclaimer of claim scope under our precedent? I think there's a long list of cases that say that unless it's clear and unmistakable that just referring to the preferred embodiment as the invention is not sufficient to be a disclaimer. But where do you say preferred embodiment and where are other embodiments? I think preferred embodiment is the most overused expression in the patent law. Correct, Your Honor. Now patent attorneys out there are referring to preferred and alternative as second alternative. Well, that's fine when they say alternative and second alternative. When they say preferred and there's nothing else, it's not preferred, it's... There's only one embodiment disclosed in this invention. This thing was filed back in 86 before we butchered all this embodied language. Good, good expression. Thank you. So there is only one embodiment. They don't ever call it the preferred embodiment. It is the embodiment of the invention to satisfy 112 paragraph one, the best mode requirement. Anything further? Additionally, I'd like to address... Mr. Mayberry said when he was posing the question of if the spit didn't extend all the way to the length of the slicing, if it was supported. And he says, we don't know the answer to that. Well, he does. The accused product has a spit that extends two and three-eighths inch. And they slice past that spit about four to five inches. So the answer is yes, it does support the need. If they didn't need the spit, they would have eliminated it and this lawsuit wouldn't have happened. That's all I have, Your Honor. All right, thank you, Mr. Pollack. Thank you. We'll take the case under advisement. You've stimulated our appetite.